WESTMORE LUMBER CO. *v.* ORNE.

*Exemption from Taxation under the Statutes for the Encouragement of Manufactures.*

Plaintiff, a lumber company, owned a large tract of timber land, and on April 1, 1872, had about two and a half millions feet of logs cut therefrom, floating in Long Pond in Westmore, which plaintiff intended to have manufactured into lumber and shipped to market, and to that end had contracted with J. for the latter to build a mill on plaintiff's land, free of ground-rent, and to saw annually for plaintiff and for no one else for five years, certain large quantities of lumber specified, and deliver the same to a certain railroad station at a stipulated price agreed to be paid by plaintiff ; and it was further agreed, that if plaintiff should furnish lumber in the log for the erection of said mill, then said mill, but not the machinery therein, with all other buildings erected by J. on plaintiff's land, should become plaintiff's property at the end of the five years. J. drew a steam engine onto the mill site before the first of April, but had not then commenced to erect his mill, but did erect it that summer, and the engine and mill were in 1872, and thereafter, exempted from taxation by said town, under the statutes for the encouragement of manufactures, but the logs in said pond were listed to the plaintiff in 1872, and it was *held* that they were not exempt under said statutes.

REPLEVIN for a quantity of lumber. Pleas, not guilty, and justification as collector of taxes of the town of Westmore, under a rate-bill and warrant for the collection of a tax against plaintiff.

It was conceded that the tax upon which said lumber was taken was regularly and legally assessed, and that defendant's proceedings were regular, provided the lumber was not exempt from taxation under the statute of 1867, and subsequent statutes amendatory thereof. It was agreed that on October 11, 1870, plaintiff bought about 2000 acres of timber land in Westmore, and on the 25th of October, about 175 acres more ; that during the following winter plaintiff cut and drew about two and a half millions feet of lumber from said lands, and left it upon the ice in Long Pond in Westmore, for the purpose of having it cut into lumber and delivered at a railroad station for shipment to market under a parol contract then existing between plaintiff and one John H. Jacobs, and subsequently reduced to writing, as hereafter stated ; that in the spring of 1872, the listers set said lumber in the list to the plaintiff; that there was then no mill in the vicinity of said pond

for cutting said lumber, but that on March 19, 1872, said verbal contract was reduced to writing, whereby it was agreed that said Jacobs should erect a steam mill upon plaintiff's said land, and should annually for five·years, manufacture for plaintiff certain large quantities of lumber therein specified, at certain prices named, and deliver the same at the railroad station at West Burke ; that in consideration that plaintiff would furnish the lumber in the log for erecting said mill, the mill, but not the machinery therein, and the other buildings that Jacobs should erect upon the land, should remain thereon at the termination of said contract, and be the property of the plaintiff, and that Jacobs was to cut lumber in said mill for no one but plaintiff.

In the winter of 1871–2, Jacobs drew a steam engine upon the land near said pond, in contemplation of said contract, and the listers of Westmore placed the same in the list of 1872, and marked the same as exempt for five years, under the statute ; and said mill and other buildings and the machinery, when built and put in operation, as they were in the summer·of 1872, were placed in the list, and are still placed in the list, as exempt under the statute ; and this was done from the outset, upon the claim of said Jacobs, who built said mill, that the same was exempt under the statute.

A motion to dismiss was filed, but was not considered by the court. ·

Trial by the court, June Term, 1874, Ross, J., presiding, and judgment, *pro forma,* for the defendant. Exceptions by the plaintiff.

*Belden & Ide,* for the plaintiff.

*W. W. Grout,* for the defendant.

The opinion of the court was delivered by

REDFIELD, J.   This action is replevin for a quantity of lumber seized·by defendant as constable and collector of the town of Westmore, in satisfaction of a tax.   The agreed case concedes that the assessment of the tax was regular and legal, and the

defendant's proceedings regular, provided the lumber which was the subject of the tax was not exempt from taxation under the provisions of the statute.

On the first of April, 1872, the lumber was owned by the plaintiff and was in the log, cut and drawn, floating in Long Pond, so called, in said Westmore. The plaintiff intended to manufacture and market this lumber, and on the 19th March, 1872, had entered into a written contract with John H. Jacobs to erect a steam mill on plaintiff's land, free of rent, wherein said Jacobs agreed to erect a steam mill, and manufacture and deliver at the railroad station a certain quantity of lumber at a stated price ; and the plaintiff agreed to furnish such quantity of lumber annually, for five years, and pay the stipulated price. At this time Jacobs had drawn a steam boiler on to the premises, but had not begun the construction of a mill. The mill was afterwards constructed by Jacobs under said contract.

I.   The mill and machinery, when constructed, was the property of Jacobs. He was at liberty to construct a mill of such capacity as to manufacture all the lumber which his patrons in Westmore and its vicinity could furnish. The plaintiff had no control of the mill or its movement, save the contract-obligation of Jacobs to cut a stipulated quantity of the plaintiff's lumber annually. The mill and machinery were subject to attachment upon Jacobs's debts, and to be listed to him as the basis of taxation.

The statute of 1870 exempts from taxation " all manufacturing establishments hereafter erected ; and all the machinery and capital used in operating the same      *      *      for the term of five years *from the time such establishment shall be put in operation.*" At the time this property was listed to the plaintiff, this "manufacturing establishment" had not been built, and of course had not " been put in operation." The five years term of exemption had not begun on the first day of April, 1872. There existed no state of facts upon which the listers could lawfully predicate exemption from taxation under the statute. The listers, in the performance of their duty, finding this lumber belonging to the

plaintiff, were bound to place the property in the grand list as the subject of taxation.

It is made the duty of the listers to appraise the property claimed to be exempted and place it in the list, and note the time when such exemption would terminate. But on the first of April, 1872, the prospective exemption was uncertain, dependent upon future contingencies that might or might not occur ; and assuming that the property would at some period of time in the future *become exempt*, it was entirely uncertain when it would begin or terminate.

We think that at the time the grand list was taken, on the first of April, 1872, it could not be justly claimed that this property was exempt under the statute from taxation.

II. The statute exempted the " manufacturing establishment " in the list of Jacobs for the term of five years from the time it went into operation, and was intended to operate upon the list of the owner of the " establishment." But when one owns the timber-land and furnishes the lumber ; another furnishes the team to draw the manufactured article to the railway station ; and the railroad corporation carries it to market ; all have an agency, and, measurably, contribute " *capital* for operating " the establishment ; yet the statute was not intended to exempt the property of all these contributing agencies in operating the establishment.

The fact that the plaintiff was to furnish the entire supply of lumber for Jacobs to manufacture at this " establishment," does not differ, in principle, from a case where two or twenty furnished the material for manufacture, under similar limitations. And if the exemption would attach to such, it would to all the patrons of such a mill, however numerous, and however diverse their residence.

III. We do not deem ourselves called upon in this case to determine the scope and limit of the terms " capital used for operating manufacturing establishments," as used in the statute. But we think it quite certain the statute does not exempt 'the patrons of grist-mills and saw-mills doing general custom-work for the community in which they are located. Whether it should

include the raw material and the manufactured article of the proprietors of such mills, we do not decide. By this disposition of the case, the motion to dismiss becomes unimportant.

Judgment affirmed.